IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 10, 2020

**MICHAEL BLAND v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**No. 12-05597     James M. Lammey, Judge**

————————————————

**No. W2020-00454-CCA-R3-PC**

————————————————

Michael Bland, Petitioner, was indicted for and convicted of first-degree murder. Petitioner received a life sentence. This Court affirmed Petitioner's conviction and sentence on direct appeal, and our supreme court denied further appellate review. *State v. Michael Bland*, No. W2014-00991-CCA-R3-CD, 2015 WL 3793697, *1 (Tenn. Crim. App. June 16, 2015), *perm. app. denied* (Tenn. Oct. 15, 2015). Petitioner filed a petition for post-conviction relief in which he raised claims of ineffective assistance of counsel. After an evidentiary hearing, the post-conviction court denied relief. Finding no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and NORMA MCGEE OGLE, J., joined.

Jason M. Matthews, Memphis, Tennessee, for the appellant, Michael Bland.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Greg Gilbert, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

Petitioner was indicted by the Shelby County Grand Jury for one count of first degree premeditated murder. After a jury trial, Petitioner was convicted as charged and

sentenced to life imprisonment. Petitioner appealed his conviction and this Court affirmed. *Michael Bland*, 2015 WL 3793697, at \*1.

The following facts were presented by this Court on Petitioner's direct appeal. Prior to his murder, the victim allegedly robbed Petitioner during a dice game. *Id*. On July 12, 2012, Petitioner and his brother, David Bland, armed themselves after Petitioner spotted the victim upon the victim's return to his residence. *Id*. Petitioner and David Bland were with Christopher Williams at the time. *Id*. Mr. Williams claimed that Petitioner planned to shoot the victim in the legs and rob him. *Id*. at \*2. Mr. Williams recalled that he and David Bland remained on a side street while Petitioner waited for the victim in a concealed spot. *Id*. at \*1. When the victim approached, Petitioner fired at him multiple times. *Id*.

Decorrio Morgan, a neighbor, heard a gunshot and saw Petitioner and another man standing over the victim. *Id*. at \*2. Mr. Morgan initially stated that he observed Petitioner shoot the victim. *Id*. In a statement to prosecutors, he stated that it was Mr. Williams who shot the victim, but at trial he was certain that Petitioner shot the victim. *Id*. Rosie Mae Fason lived in the area and testified that she heard gunshots and saw two African American men run through the alley. *Id*. Francie Hunt, another neighbor, testified that she passed Petitioner, Mr. Williams, and another man. *Id*. Ms. Hunt testified that the men were carrying guns and that she heard Petitioner state, "I shot that bitch." *Id*. Jessica Bland, Petitioner's sister, testified that she drove Petitioner to another sister's house on the day of the shooting. *Id*. at \*3. Ms. Bland admitted that her testimony at trial differed from her pretrial statements to police. *Id*. She admitted that she told police that she was aware that the victim robbed her brothers during a dice game. *Id*. Ms. Bland informed police that after the robbery, Petitioner stated that he was going to "beat that boy." *Id*.

Petitioner filed a petition for post-conviction relief in which he argued that trial counsel was ineffective because he failed to properly investigate the case, failed to call witnesses to testify on Petitioner's behalf, failed to raise all viable issues on appeal, failed to object to the trial court's omission of a second degree murder jury instruction, failed to argue that the State did not prove Petitioner committed premeditated first degree murder, and failed to have Mr. Williams deemed an accomplice.

The post-conviction court held an evidentiary hearing on February 19, 2020. Rachel Geiser testified at the hearing that she worked as an investigator for Petitioner's trial counsel. Ms. Geiser became aware of a potential witness, Rodriquez Blackwell, during her investigation prior to the trial. She interviewed Mr. Blackwell and created a transcript of the interview. Mr. Blackwell told Ms. Geiser that he saw Petitioner and David Bland about forty-five minutes before the victim's murder. Mr. Blackwell was

sitting outside with the victim. When the victim left, Mr. Blackwell entered his residence. While inside, Mr. Blackwell heard a gunshot. He then went outside and heard three more gunshots. Mr. Blackwell saw the victim on the ground, and he saw "J Rock's son" leaving the scene. Ms. Geiser was unable to ascertain the identity of J Rock or his son. Mr. Blackwell claimed that Petitioner was not present during the victim's murder. Ms. Geiser recalled that the defense's theory was that Mr. Williams shot the victim. Ms. Geiser interviewed Petitioner's family members to investigate a possible alibi.

Trial counsel filed a subpoena for Mr. Blackwell to appear at Petitioner's trial, but ultimately decided not to call Mr. Blackwell as a witness because Mr. Blackwell's testimony did not support trial counsel's theory that Mr. Williams was the shooter. Trial counsel recalled that he interviewed Mr. Williams and that Mr. Williams stated that it was Petitioner's idea to shoot the victim. Trial counsel recalled that Mr. Morgan identified both Petitioner and Mr. Williams as the shooter at different times. Trial counsel remembered that Ms. Hunt testified that she saw Petitioner running away from the murder scene. Trial counsel stated that he interviewed Petitioner's family members, but did not come up with a "solid alibi witness." He noted that Ms. Bland testified at trial, and her testimony contradicted what Petitioner's other sister, Jennifer Miller, stated at the post-conviction hearing. Trial counsel explained that it was more effective to cross-examine a State witness than it would be to call a witness for direct-examination. Trial counsel argued that the trial court should instruct the jury that Mr. Williams was an accomplice to the murder as a matter of law so that the jury could not convict Petitioner on Mr. Williams' testimony alone. The trial court ruled that the jury should make the determination as to whether Mr. Williams was an accomplice.

Ms. Miller testified that prior to trial, she informed defense counsel that Petitioner arrived at her house about 2:30 p.m. Her house was about 20-30 minutes away from the murder scene. After Petitioner arrived at her house, Ms. Miller and Ms. Bland went to their mother's house, located near the murder scene. Upon arrival, Ms. Miller saw seven or eight police cars. Ms. Miller claimed that she saw Mr. Williams in one of the police cars. She further claimed that she heard Mr. Williams state that he "did it for the A." She clarified that "A" was the nickname that the street had been given. Ms. Miller testified that Ms. Hunt informed Petitioner's stepfather that if Petitioner's family "gave her more than what they were giving her, then she would say whatever [Petitioner's family] wanted her to say." Ms. Miller admitted that Ms. Hunt never acknowledged that she was paid for her testimony.

Petitioner testified that defense counsel should have called Mr. Blackwell to testify. Petitioner claimed that Mr. Blackwell would have testified that Petitioner did not shoot the victim and that Mr. Blackwell's testimony would have supported his alibi defense. Petitioner claimed he was at Ms. Miller's house during the shooting. He

admitted that the victim robbed him prior to the victim's murder. Petitioner admitted that Ms. Bland testified at trial that Petitioner vowed revenge for the robbery. He also claimed that David Bland was present at Ms. Miller's house with him during the shooting. In 2019, Petitioner received a letter from Mr. Williams that claimed Mr. Williams testified against Petitioner because Mr. Williams believed that Petitioner was trying to frame him for the victim's murder. Petitioner denied that he killed the victim. Petitioner claimed that he instructed Mr. Williams to rob the victim.

The post-conviction court stated that it was "having trouble identifying any place where [defense counsel] had deficient performance." The post-conviction court further stated that without finding deficient performance, "there can be no prejudice." The trial court surmised that it was easy to look back and "second guess the trial strategy." The trial court denied post-conviction relief. It is from that denial that Petitioner now appeals.

*Analysis*

On appeal, Petitioner argues that the post-conviction court erred in failing to perform the proper analysis in determining if trial counsel was ineffective for not calling Ms. Miller and Mr. Blackwell to testify on Petitioner's behalf.[1] Petitioner further argues that the post-conviction court erred in finding that trial counsel was not ineffective for failing to present an alternative theory of the case. The State argues that the post-conviction court properly concluded that trial counsel's representation of Petitioner was reasonable and did not prejudice Petitioner. We agree with the State.

Post-conviction relief is available for any conviction or sentence that is "void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In order to prevail in a claim for post-conviction relief, a petitioner must prove his factual allegations by clear and convincing evidence. T.C.A. § 40-30-110(f); *Momon v. State*, 18 S.W.3d 152, 156 (Tenn. 1999). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998). On appeal, a post-conviction court's findings of fact are conclusive unless the evidence preponderates otherwise. *Vaughn v. State*, 202 S.W.3d 106, 115 (Tenn. 2006). Accordingly, questions concerning witness credibility, the weight and value to be given to testimony, and the factual issues raised by the evidence are to be resolved by the post-conviction court, and an appellate court may not substitute its own inferences for those drawn by the post-

---

[1] Petitioner appears to abandon all other arguments from his petition on appeal. *See Ronnie Jackson, Jr. v. State*, No. W2008-02280-CCA-R3-PC, 2009 WL 3430151, at *6 n.2 (Tenn. Crim. App. Oct. 26, 2009) (holding that claims raised in the trial court but not raised in the appellate brief are deemed abandoned), *perm. app. denied* (Tenn. Apr. 16, 2010).

conviction court. *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). However, the post-conviction court's conclusions of law and application of the law to the facts are reviewed under a purely de novo standard, with no presumption of correctness. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001).

Both the Sixth Amendment to the Constitution of the United States and article I, section 9 of the Tennessee Constitution guarantee the right of an accused to the effective assistance of counsel. *See Davidson v. State*, 453 S.W.3d 386, 392-93 (Tenn. 2014). In order to sustain a claim of ineffective assistance of counsel, a petitioner must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under the two prong test established by *Strickland v. Washington*, 466 U.S. 668, 687 (1984), a petitioner must prove that counsel's performance was deficient and that the deficiency prejudiced the defense. *See State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel applied in federal cases also applies in Tennessee). Because a petitioner must establish both elements in order to prevail on a claim of ineffective assistance of counsel, "failure to prove either deficient performance or resulting prejudice provides a sufficient basis to deny relief on the claim." *Henley v. State*, 960 S.W.2d 572, 580 (Tenn. 1997). "Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697).

The test for deficient performance is whether counsel's acts or omissions fell below an objective standard of reasonableness under prevailing professional norms. *Strickland*, 466 U.S. at 688; *Henley*, 960 S.W.2d at 579. This Court must evaluate the questionable conduct from the attorney's perspective at the time, *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982), and "should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *State v. Burns*, 6 S.W.3d 453, 462 (Tenn. 1999). This Court will not use hindsight to second-guess a reasonable trial strategy, even if a different procedure or strategy might have produced a different result. *See Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *Williams v. State*, 599 S.W.2d 276, 279-80 (Tenn. Crim. App. 1980). However, this deference to the tactical decisions of trial counsel is dependent upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Even if a petitioner shows that counsel's representation was deficient, the petitioner must also satisfy the prejudice prong of the *Strickland* test in order to obtain relief. The question is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S.

364, 372 (1993). A petitioner must show that there is a reasonable probability "sufficient to undermine confidence in the outcome" that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Burns*, 6 S.W.3d at 463 (quoting *Strickland*, 466 U.S. at 694).

## I. Failure to Call Witnesses at Trial

Petitioner specifically argues that the post-conviction court erred when it found that trial counsel was not ineffective because he failed to call witnesses to testify on Petitioner's behalf at trial. The State argues that trial counsel's decision not to call Mr. Blackwell or Ms. Miller was reasonable and did not prejudice Petitioner. We agree with the State.

As an initial note, Petitioner asserts that the testimony of Ms. Miller and Mr. Blackwell were admissible at trial and material to Petitioner's defense. However, Petitioner only called Ms. Miller to testify at the post-conviction hearing. Petitioner did not present Mr. Blackwell at the post-conviction hearing. Petitioner only presented testimony from Ms. Geiser as to what Mr. Blackwell told her. Because Mr. Blackwell did not testify at the post-conviction hearing, the Petitioner cannot show prejudice. *See Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Neither the post-conviction court nor this Court can "speculate or guess" about whether Mr. Blackwell's testimony would have affected the outcome of Petitioner's trial. *See id.* Therefore, Petitioner failed to establish by clear and convincing evidence that trial counsel's decision not to call Mr. Blackwell as a witness was deficient or caused Petitioner prejudice.

Petitioner argues that the post-conviction court must determine whether the testimony would have been admissible at trial and material to the defense. *See Plyant v. State*, 263 S.W.3d 854, 869 (Tenn. 2008). Once those determinations have been made, the post-conviction court must assess the witness's credibility. *See State v. Dych*, 227 S.W.3d 21, 40 (Tenn. Crim. App. 2006). In *Plyant*, the issue was testimony that the post-conviction court struck and refused to consider after finding the testimony was inadmissible hearsay. 263 S.W.3d at 870. Here however, it is not a question of the testimony being admissible and material or a matter of witness credibility. It is a matter of trial strategy. As to trial counsel's decision to not call Ms. Miller, trial counsel testified that he did not call her because her testimony would not support the defense theory that Mr. Williams was the shooter. Trial counsel also testified that Ms. Miller's story "conflicted a bit" with that of Ms. Bland, who testified for the State. Trial counsel stated that "it is much easier to cross-examine somebody and get information that is favorable to your client rather than on direct questioning." Trial counsel testified that he "didn't want to throw a wrench into my theory that would take the jury away for [Mr.]

Williams" as the shooter. We will not second guess a reasonable trial strategy. *See Adkins*, 911 S.W.2d at 347.

The post-conviction court stated that "it's a two prong test, you have to have deficient performance and you have to have prejudice because of that [deficient performance]." The post-conviction court stated it was "having trouble identifying deficient performance." The post-conviction court further said that trial counsel "just wasn't able to convince the jury that it was really Mr. Williams." In its order, the post-conviction court stated that Petitioner "has failed to carry his burden of proof as to either deficient performance or prejudice." The evidence does not preponderate against the findings of the post-conviction court. Petitioner is not entitled to relief.

## *II. Failure to Present Alternate Theory*

Petitioner argues that the post-conviction court erred in determining that trial counsel was not ineffective for failing to raise an alternate theory of the case. The State argues that trial counsel's defense theory and trial strategy were reasonable and did not prejudice Petitioner. We again agree with the State.

Specifically, Petitioner argues that trial counsel was deficient because he "had but a single theory of the case – that [Mr.] Williams and not Mr. Bland, was the sole person responsible for the murder of the victim." Petitioner argues that trial counsel should have presented an argument that Mr. Williams and Mr. Bland were accomplices and their intent was "nothing more than to rob the victim." Petitioner asserts that if trial counsel had presented this theory it could have led to Petitioner being found guilty of a lesser charge. However, trial counsel asked the trial court to instruct the jury that Mr. Williams was the Petitioner's accomplice as a matter of law. The trial court made the decision that the jury should make the factual determination as to whether Mr. Williams was an accomplice, and this Court affirmed that decision on direct appeal. *Michael Bland*, 2015 WL 3793697, at \*6. Trial counsel chose a reasonable strategy and this Court will not second guess that decision. *See Adkins*, 911 S.W.2d at 347. The evidence does not preponderate against the finding of the post-conviction court. Petitioner is not entitled to relief.

## *Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
TIMOHTY L. EASTER, JUDGE

- 7 -